Good morning, Governor. My name is Andrew Howden. I'm representing Illinois National Insurance Company. I'd like to go straight to what I think is the central issue in this appeal, and that is intent. First of all, what is the intent behind this policy? And also, whose intent do we need to look at? Do we get to intent if the language is clear? It depends on what your interpretation of clear is. Because if we're going to consider reformation based on mutual mistake, it doesn't matter if the language is clear or unclear. If the interpretation that you find is clear does not reflect the intent of the contracting parties, we still have to go to reformation. And that's why I believe it would be helpful to go straight to intent, but I'm happy to entertain any questions. Is that a legal determination, what the parties intended? Yes, it is, Your Honor. That it's an actual decision? I think it's the goal of your policy interpretation is to ascertain the intent of the policy. Here, as a factual matter, the intent of the contracting parties is undisputed. Absolutely undisputed. So this does come down to a legal issue. Is it undisputed by Wyndham? Yes, it is, Your Honor. Absolutely. So they agree that they were not covered under your policy for aircraft that they did not own? Wyndham is not operated by Jet Aviation. Correct, Your Honor. First of all, Wyndham does not dispute that Jet Aviation purchased this policy, that Jet Aviation and its broker Marsh negotiated this policy with Illinois National. Wyndham doesn't dispute that. Wyndham does not dispute that Jet Aviation, Marsh, and Illinois National, all three never intended, from 2004 all the way through the policy it issued, that insured owners, like Wyndham, would have coverage for non-owned aircraft that weren't arranged by Jet, to phrase it more briefly. Wyndham also does not dispute that when that change was initiated by Marsh, it wasn't Marsh's intention to change the coverage for insured owners. It wasn't Jet Aviation's intention. The district court did not make any of those findings, though, did they? No. My concern, you raised intent right up front, okay? And I understand your reason for doing that. But how do we get to the question of intent, particularly if we find that the contract was unambiguous and clear? Well, if Your Honor finds that the contract was unambiguous and clear, that Wyndham was not entitled to the coverage that they now say they have, then no, you don't have to go any farther, because that comports with the undisputed intent of the parties. If Your Honor finds that the contract is clear and that coverage is there, how do we get to the question of intent? How do we get to the issue of mutual mistake? Because you still have to go to the claim for reformation. All right. Finding that the policy is clear argument that the district court applied the wrong test. Absolutely. I think that the district court made a critical error when it ruled that because Wyndham was not involved in the negotiation, the drafting of the policy, that shut the door. All right. You really can't have New Jersey law to determine that question, correct? Yes, Your Honor. This policy has many ties to Illinois, but there is no real difference in the law of Illinois or the law of New Jersey, so we would be applying New Jersey law. But you said the contract is clear on its face, but you want us to change it. Our position is that the only reasonable interpretation of the managed aircraft endorsement is that it does not provide non-owned aircraft coverage to Wyndham for aircraft not arranged by a check. Well, if I give the contract a plain reading, it does provide that Wyndham is named and insured and Wyndham is covered under the policy. That might not be what you say now you intended, but that's what the contract says. But I believe to reach that conclusion, Your Honor, you have to ignore the fact, as did the district court, that Wyndham is identified throughout that endorsement as insured owner. But you can be an insured owner and you can be an insured also, can't you? But both terms are used, they're separated and distinguished in the managed aircraft endorsement. As we demonstrated in our brief, if you insert Wyndham everywhere it says insured owner and everywhere where it says named insured, the endorsement no longer makes any sense. Did Judge Brown accept your interpretation that Wyndham was not intended to be insured under this policy? I don't think he made a finding in that regard because he did not address any of these intents. He rejected your request for reformation of the policy. Yes, he did. Did he go right to that without determining whether Wyndham was indeed covered under the policy? No, his first step was to find that in his view the endorsement was clear and provided coverage to Wyndham. In fact, he granted the motion to dismiss on your request for reformation, did he not? Yes, he did. So he basically said you didn't adequately plead your case. Yes, he did. Did he give you a chance to file an undeclaration? No, he did not. Why is reformation appropriate? Because it is undisputed that the policy as Judge Brown found it, providing coverage for Wyndham, is contrary to the intent of everyone involved. The District Court's finding is that you're not entitled to reformation because there is no mutual mistake, and a mutual mistake is necessary for reformation. That is what he found. What's wrong with that? Because a mutual mistake is when the policy or when the contract does not reflect the intent of the contracting parties. The fact that he found the policy clearly provided coverage to Wyndham doesn't end the inquiry. He needed to go further. Can you seek reformation of a contract against the party who was not involved in contracting or negotiating for the contract? Absolutely. That is what the Healy and Furr case tells us. That is what effectively happened in the cases that we've cited. Cabs from the Tenth Circuit, one deacon from the First Circuit, the Florida Supreme Court case, which I'm suddenly blanking on the name of. Those were all circumstances. Is it your primary argument here that we should reform this contract or that the District Court should reform the contract based on unilateral mistake? No. We have never argued this was a unilateral mistake. Mutual mistake? This is a mutual mistake, Your Honor. Between you and Jet Aviation? Or its agent? Between Jet, its agent, Marsh, and Illinois National. Now, there's a twist here. But you want that mutual mistake to operate against Wyndham? Yes, and it can under the law, Your Honor. But there's a twist here. Under the New Jersey law? Yes. Okay, what's the twist? I'm sorry. There is a twist here because Wyndham shared the same understanding and expectation as everyone else on this policy. Let me ask you a question. Would this involve a difference in premium? In other words, if Wyndham were, in fact, covered under the policy for non-owned aircraft that was not operated by Jet Aviation, would they have to pay more for the policy? Yes. And our underminers are testifying to that effect. Because it is a huge difference. In other words, it would be in a totally different category. It's a hugely different exposure. Because no longer is it just aircraft that Illinois Nationals insure Jet Aviation arranges, and they know that insure, they know their competence, they know their skills. Instead, Illinois Nationals is now insuring a party that can rent or arrange aircraft anywhere in the world with all unknowns. Unknowns of what aircraft they're renting, who they're renting from, who's flying them. Very different exposure, Your Honor. Okay, thank you. Thank you. Thank you. Good morning, Your Honor. Good morning, Mr. Lichtenstein. Lichtenstein, but I'll accept Steiner. But that's not what the panel wishes to address, Your Honor. If you want, it's Michael Lichtenstein on behalf of the Wyndham parties who are the appellees in this case. I'll try to get this to flow enough. So let's go right to the issues Mr. Houghton raised with the panel. Issue number one, Judge Brown clearly found that the contract was unambiguous on its face. That as amended in the 2008 policy, the managed aircraft endorsement provides coverage for the accident that occurred in August of 2008. There's no question about that. Had you been covered under prior policies in the same posture in Illinois, to ask? He's not, Your Honor. So this came from out of the blue, sort of? I think it did from Wyndham's perspective. It absolutely came out of the blue. So you had similar, identical contracts in prior years. And then in the year 2008, suddenly you are an insured, named insured. No, people are named insured in every policy, Your Honor. 2004, 2005, 2006, and 2007. This is the fifth policy. But this is the first policy in which you were covered for non-owned aircraft that was not operated by Jet Aviation. That's exactly right. That is correct, Your Honor. And when you go to that issue, Mr. Houghton said something that I think is really not accurate. The change that was made in the 2008 policy, which was made by his client, Illinois National, the insurance company in this case, they decided to expand the coverages that were available for non-owned aircraft. In prior policies, there was only one entity whose involvement would bring a non-owned aircraft under coverage, and that was called Jet Aviation Business Jet. They're located in Teterboro, New Jersey. There was a clear intention, which is in the certifications that Mr. Houghton's client filed in the district court, that the intention was to expand the coverages to many more companies who could arrange their non-owned aircraft and still have coverage under this policy. That's why they made the change. The problem, the mistake, was that instead of just listing 20 or so Jet Aviation entities, they're actually identified in the appendix at A119 under the definition of named insured, which, by the way, also includes Wyndham in that definition. Instead of doing that, they simply substituted out Jet Aviation and put in the defined term, named insured. That's how you would get coverage for this accident. That's correct. Isn't this essentially a scrivener's error? It's just a mistake in drafting. Absolutely not. A scrivener's error is a typographical error when the parties say it should be 20, but someone writes 200. Or you miss a comma or a decimal point, but you're supposed to state the one that's best as endorsement, and you accidentally put the nuclear exclusion to the policy. This was an intentional act by Illinois National. They tried to expand the coverages available to Wyndham, so that if Wyndham had 20 other entities arrange a non-owned aircraft for people— You're saying they tried to expand the coverage to Wyndham? I thought you just said they tried to expand the coverage to the other Jet Aviation subsidiaries. That's 100% correct, Eric. If you take their evidence at face value, which we do for the purposes of this proceeding, they tried to expand the coverage to 20 other Jet entities. But the way they did it, Wyndham was not a Jet entity. That's correct. The mistake they made is the way in which they chose to do it, which was an intentional act, no scrivener's error. They simply put in the used term, named insured. They took a common term in the policy and plugged it in. Which is their term you're on. They draft the policy. They've been using named insured to include Wyndham for five years. And if you look on the face of the endorsement, they repeat the definition of named insured in paragraph one of the endorsement. It's right there. Named insured equals the Jet entities and Wyndham. Wyndham was not part of these negotiations. Absolutely not. There was never any intent to include Wyndham in that expanded coverage, was there? Well, we don't, according to, again, taking them at face value, they say they mean Jet and their agent Marsh, Illinois National and their underwriter, Charles, all say that was not their intention. Okay. You don't dispute that? We can't, Your Honor. We don't dispute what their intention was. All we can tell you is what our intentions were. And we were not part of those negotiations. Okay. So you were outside. That's correct. And we said, take your lead in contractification. Here's the policy. Why didn't the district court apply the wrong test as to determine whether or not this policy should be analyzed under the concept of mutual mistake? Well, because it's clearly a unilateral mistake. Let me step back and talk about contracting parties. I think Illinois National confuses two concepts. You can have negotiating parties and you can have contracting parties. Now, it's very typical in the insurance context that there is no negotiation. That's why the contracts have adhesion. So in the audit policy, you or I may have purchased. We may have told them what it should be and what our deductible is supposed to be, but we don't negotiate the coverage terms of that 35-page monster. But a non-contracting party can bring a claim for reformation. Isn't that so in New Jersey law? A non-contracting party. A third-party beneficiary to a contract can bring an action. They can. So you don't have to be a contracting party to bring an action. No, you never are. But in this case, why can't you do it the other way? Why can't reformation be made applicable to someone who is not a contracting party? Well, as a pointer, I think that they can, except that Wyndham clearly is a contracting party here. Wyndham had a choice. When Wyndham agreed to enter the contract with Jet Aviation, a requirement of that contract was to buy aviation insurance. Wyndham is not a contracting party with Illinois National, is it? Sure they are. They're a name insured under the policy. They paid $47,000 of premiums that went to Illinois National. An endorsement was issued by Illinois National specifically to Wyndham, and they sent them a copy of the policy. We are absolutely a contracting party in the insurance context. Is that what the district court concluded, is it? The district court said we didn't negotiate. The district court said we had no way of knowing what Illinois National's intent was when they made the change to the 2,000-day policy because we weren't told. You said it was a unilateral mistake and not a mutual mistake. Correct. Illinois National said it was clearly a mistake on their part. We agree with that. Is there anything in the record that says that Jet and its entities intended to expand this endorsement to cover Wyndham? No. Doesn't that make this a mutual mistake? No, because we believe, as Judge Brown correctly decided, that for the purposes of amending our coverage under the policy,  I think you just said a moment ago that you agree that Illinois National made a mistake. They did. Well, if reformation is an equitable principle, wouldn't equity require that we do what's right and what's correct? Well, they're very clear. When you make a unilateral reformation, typically courts don't try and correct. Courts enforce contracts that are written. They'll make better contracts for parties than they make for themselves. No, but you concede it, and if you concede it, courts also have to do what's correct and what's right, and there are equitable principles that may be applied in contract situations, such as reformation. Well, but in this case, I think the law in New Jersey is very, very clear. If you have a unilateral mistake, courts will almost never reform policies. In fact, there's many cases that are cited in both briefs where you have situations that would appear on their face to have given inequitable results, but that's the law. Courts simply don't go and correct mistakes that people make in contract after contract after contract. I know. Well, I think because there's more uncertainty in contracts, Your Honor, I think the idea is you put the burden on the contracting parties not to make mistakes. I mean, in this case, this is quite an error by a sophisticated insurance company to issue a policy which I think we all agree plainly on its face provides coverage for this incident. After the takeout premiums, after the accident happens and the claim gets made, they say, oops, this is a real bill here. But they also took less premiums. I mean, the policy premium went down every year. But it would show you that we certainly didn't go up when they expanded it to non-owned aircraft that Lindemann would have rented from somebody else on the open market. Well, this is sort of the way premiums work, I believe, Your Honor, in the insurance practice. Premiums are driven more by the marketplace than they are by the relationship between premium and risk. When I think of this very policy, Illinois National... That doesn't sound right. You mean risk is not a major factor in setting premiums? Well, look at what happened to the premiums. In 2006, the premium was $71,000. In 2007, the premium was $61,000. In 2008, the premium was $47,000. Now, even by Illinois National's own testimony, they weren't reducing the coverage, but they were reducing the premium by some 25%.  They're hustling clients, Your Honor. So they lowered the cost of the policy because they want our client to continue to buy it. You'll also see in the record instances where Illinois National voluntarily expands coverage and they don't charge any more of their premium. Now, Lindemann also went out and insured this risk with another company, did you not? They had. Starnetter. That's correct, Your Honor. Again, in 2004 through 2007, the policy, I believe, was clear that there was no coverage for this type of a risk. A company went out and obtained a different insurance policy to cover the risk. Now, to understand the district court's decision, the district court concluded that he could not reform this contract because in order to reform it, I need to have both the contracting parties before me. And I didn't have Jet Aviation before me, is it? No, I don't believe that that's true at all. I think the court said the contracting parties here are Lindemann and Illinois National. Those are the parties we're going to focus on. Lindemann had no knowledge of why Illinois National was trying to change the language in the managed aircraft industry. Judge Brown considered Lindemann as the contracting party in the contract that he said could not be reformed. The mutual mistake was between Lindemann and Illinois National. Well, they found out, again, that there was no mutual mistake, and I think the basis for that finding is that since Lindemann had no way of knowing what was in Illinois National's mind when they made the change to the 2008 policy, the mistake could not possibly be mutual. So at that point, he said, well, you're on your own. You made a unilateral mistake. I'll give you credit that it was an error. We'll take your testimony at face value. Now let's go through the four-part testimony in New Jersey law. One was to create an unconscionable result. And the court said, no, this is an insurance company who provided slightly more coverage to its insurer than it intended. Nothing unconscionable about that. And then he went to the third point, which was negligence. And I think his exact language is they were at least negligent in choosing to use insured owner – I'm sorry, named insured as the method for making this limited expansion of coverage, which has turned into a much larger expansion of coverage. I think what he was really signaling is that it was grossly negligent or worse, because if you look on the face of the contract, it's absolutely clear that this is covered, and it would be a herculean error, I think. You'd have to find if this was a substantially negligent act by the insurance company to find it was just a mere mistake. So you're saying the mutual mistake was between Wendell & Anderson or Ellen & Anderson and not between Jet Aviation and insurance? That's correct, Your Honor, for purposes of this reformation and asks. I think I'm – I can't take a look. I'm sure I'm out of time. No? No. Am I still off time? You have to talk for another three minutes. Okay, Your Honor. I don't even know if to talk at all. Sometimes I should sit. Can I just – I'm wondering if there's two issues that are policy issues that I think may have relevance here in the event that the court were to conclude that there might – there's a possibility of there being a mutual mistake. The first one is the issue of post-occurrence reformation. We feel very strongly that in this case there should be a bright-line rule that this court should not allow an insurance company to try and reform the language of a clear and ambiguous insurance policy after the occurrence giving rise to the rightful remedy has happened. Just from a policy perspective, the burden should be placed on the insurance company to make sure that they issue accurate policies because they're in control of the language. And the opportunity for mischief – I know this court has had many famous coverage cases in its past 20 years as long as I've been practicing. And I know you've seen coverage reservation letters and deny letters. Now, there are also 30-page monsters that cite chapter and verse and the policies. And there's Tom Wooley parsing that goes on when you make a claim to a carrier. Well, if we allow them now post-occurrence reformation powers, the opportunity for mischief is tremendous. Not only will they deny claims based on the language that's there, they'll tell you there was other language that was supposed to be there but didn't get in there by mistake. But I think the problem is that you agree that you were not an intended beneficiary of the contract. No, I do not agree with that, Your Honor. I thought you said before that you agreed that they made a mistake. I think they made a mistake with regard to how broadly they expanded the coverage. But we are clearly an immature under the policy. We have all the rights and benefits under the policy. Well, you are an immature, but that was a mistake. No, no. They intended to make us an immature. They just didn't intend to make us – to identify us as a party who could be operating a non-owned aircraft and still have coverage under this policy. I think it's a meaningful difference, Your Honor. I mean, we have the cases that Mr. Harbin cited – One Beacon, Tobin, Cabs, Inc. Those are all what I might call the accidental insurers. Those are all folks who claimed rights under somebody else's policy because they read the language and said, you know, it's really broad enough. We should have some coverage here. But that's not what's happening here. Wyndham has always had coverage under this policy. We're talking about one small coverage grant in a very large $300 million insurance policy. That's all we're talking about. And Wyndham was always known to Illinois National. Wyndham always had rights under this policy. And even if this were reformed, we'd still have rights under this policy, notwithstanding a mistake. Let me leave you with this one last thought. The mistake that was made here – and I think this is undisputed, although I may hear otherwise in a moment – that Illinois National intended to expand coverage from the one-jet entities to many, many, many-jet entities. That's what they intended to do. So how do we know whether reformation should work here or not? If you agree with me that Wyndham is the party on the other side of that analysis, you have to ask yourself, well, what would you reform the policy to? Mr. Howard, what should the policy say? And I think he's got to respond. The policy should say you would take out what we put in named insured and you'd substitute it with the 20-jet aviation – if that's what you mean. So now you have to ask yourself, did Wyndham understand that was Illinois National's intention? Is it possible, having not been involved in the negotiation of the policy, that it would have known that that's what Illinois National meant when it put in named insured and didn't put in the 20-jet? I think the answer there, Judge Brown, is clearly not. Were all the other prior policies stating that jet aviation was in fact the named insured? In other words, the error was that jet aviation was taken out and Wyndham was put in. Not in the definition of named insured. Jet aviation was always a named insured. Wyndham has always been a named insured. As are any of jet aviation's clients who elect into the fleet program. That definition hasn't changed since 2004. Thank you very much. I appreciate it. Thank you very much. Your Honor, the test of reformation based on mutual mistake is not whether the two parties on either side of the V in the action were holding hands when the mistake was made. To frame this as Wyndham had no knowledge of the change that was made or didn't have an understanding of what Illinois National and Marsh intended when they made that change is not the test. The test is, does the contract accurately reflect the intent of the contracting parties? Well, Steinstein says that it does. The intent was that it be insured for aircraft not owned by and not directed by jet aviation. There is nothing in the record where Wyndham says that was our intent. Absolutely nothing. In fact, now Wyndham claims to be a contracting party. I don't think they are. But let's say for argument that they are. Did they have an understanding? Of course they did. Were they considered a contracting party by the district court? I don't think so. How can you say that? If his ruling was Wyndham, well Judge Brown did find in his opinion, he knows, this policy was negotiated by jet and Illinois National. But you don't have to negotiate to be a party. Well, I think there is a difference between a party to a policy and a contracting party. I think there is a difference there. Someone can be an additional insured or another named insured. That doesn't make them a contracting party. I think the contracting parties are the people who created the contract. Those are the people whose intents have to be looked at. Was that the basis for the district court's ruling that Jet Aviation and Illinois National were the contracting parties and they didn't have any mistake between those two? No, I don't think that was his analysis at all. I think his analysis was simply Wyndham was not involved in negotiating and drafting. Therefore, there was no bargaining by Wyndham. As a matter of law, there can be no mutual mistake. I think that was his primary error here. If I could just briefly, quickly get back to taking for a moment, let's assume that Wyndham was a contracting party. Obviously, they had an expectation that was the same as everyone else's. We can't leave Jet and Marsh out of the equation here. As much as Wyndham wants to argue that this is all Illinois National's doing, it was a shared understanding between those three parties. We can also look at Wyndham's understanding and expectation. The contract with Jet did not require this coverage. Wyndham never asked Jet to provide them with this unlimited non-owned coverage. Year after year, Wyndham received confirmations of coverage that clearly expressed the limitation. Year after year, Wyndham went out and bought the coverage from someone else because they knew they didn't have it under this policy. Is all this subject to discovery? I'm sorry? Discovery. All this information that you're providing us with now, is this all subject to discovery, depositions and so forth? Yes. It's all specified in our papers. In 2008, Wyndham again received a confirmation of coverage that showed the limitation. No unowned coverage unless it's an aircraft arranged by Jet. Wyndham's broker confirmed that understanding for them. They argued that that was an error by the broker. It doesn't make a difference because that was the understanding between the broker, Wyndham's broker and Wyndham. Wyndham again went out and obtained the non-owned coverage from StarMet. Immediately after this accident, who did they go to? StarMet. The next day they went to StarMet because that's where they saw their coverage for this accident. It was an afterthought, I'm sure encouraged by StarMet, that they approached Illinois National. Thank you, Mr. Houghton. Thank you. Thank you for your well-presented argument. Both of you will take the case under advisement. Thank you.